IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARNULFO SILVA | : |
| | : |
| **Plaintiff,** | : |
| | : CIVIL ACTION |
| v. | : |
| | : 14-199 |
| BERKS COUNTY CHILDREN AND | : |
| YOUTH SERVICES, et. al., | : |
| | : |
| **Defendants.** | : |

## OPINION

**STENGEL, J.**                                                                                  September 18th, 2014

Arnulfo Silva, plaintiff, brings this action under 18 U.S.C. § 1983 charging Berks County, Berks County Children and Youth Services (CYS) and various CYS employees with the arbitrary deprivation of his right to care, custody and management of his daughter. Currently pending is defendants' motion to dismiss. I will grant the motion and dismiss the case with prejudice.

## I.   BACKGROUND

In October 2009, eight month old N.S. suffered a severe head and neck injury while in the sole care of her mother, Christina Silva. Compl. ¶ 12; Opinion of Superior Court ("Opinion"),[1] Compl. Ex. F, 2. The infant's injuries were severe[2] requiring surgery

---

[1] Mem.of Op., In re N.R.S., 495 MDA 2012 (Pa. Super. Dec. 11, 2012).

[2] "[N.S.] had a long vertical linear non-disclosed skull fracture to the right parietal bone…. She also had an impressive amount of swelling and a moderate sized acute subdural hematoma. There was brain matter coming through the skull fracture. During the surgery, the doctor also noticed a large tear in the underlying dura and a laceration of the underlying brain was significant, with significant brain swelling and injury." Opinion at 2. "These same injuries were later equated to be that of a severe car accident and were determined to be caused by severe blunt force trauma." Id. at 12.

to remove a part of her skull. Compl. ¶ 14. The infant's doctors determined that the injuries were not accidental, and CYS concluded that Mrs. Silva was the perpetrator. Opinion at 2. Following the incident, Mrs. Silva and Mr. Silva signed a voluntary placement agreement,[3] and the Berks County Court of Common Pleas adjudicated N.S. a dependent child[4] and transferred custody of N.S. to CYS. Compl. ¶¶ 15, 17. Following the court order, Mr. and Mrs. Silva separated and eventually divorced. Id. ¶ 19.

Throughout the dependency, CYS found that Mr. Silva was cooperative and demonstrated that he could care for N.S. Id. ¶ 21. By order dated June 1, 2010, N.S. was returned to Mr. Silva's custody, but Mrs. Silva could only have supervised visitation. Id. ¶ 22; Opinion at 3. On October 28, 2010, the Court of Common Pleas ended the dependency. Compl. ¶ 23. On November 16, 2010, CYS learned that Mr. Silva, N.S. and

---

[3] Mr. Silva signed the agreement solely on the grounds that he would be unable to provide the level of care his daughter would need as the injuries healed. Compl. ¶ 16.

[4] A dependent child "is a child who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S. § 6302. A court may declare a child dependent and remove the child from her home after finding:

> "(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and
>
> (2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or
>
> (3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or
>
> (4) if the court has previously determined pursuant to section 6332 (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; and
>
> (5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling."

42 Pa. Cons. Stat. Ann. § 6351.

Mrs. Silva were together without supervision at a grocery store. Id. ¶ 27. The parties dispute whether the meeting was planned or a chance encounter. Id. ¶¶ 28, 29. It is also disputed whether Mr. Silva had notice that Mrs. Silva's visitation rights were restricted following the termination of dependency. Id. ¶¶ 25, 26.

On November 30, 2010, Defendant Richelle Smith, a CYS caseworker, filed a dependency petition in the Berks County Court of Common Pleas citing violations of the safety plan. Id. ¶ 31. CYS removed N.S. from Mr. Silva's custody the same day. Id. On May 6, 2011, Defendant Jennifer Kemmerer, the caseworker assigned to the Silva family, prepared a service plan which included the objective of placing N.S. for adoption. Id. ¶¶ 10, 45. Defendant Donna Baumener, Ms. Kemmerer's supervisor, approved and signed the plan on May 10, 2011. Id. ¶ 45. On June 27, 2011,[5] CYS filed a petition for involuntary termination[6] of Mr. and Mrs. Silva's parental rights. Id. ¶ 33. On September 19, 2011, Ms. Kemmerer filed a Petition for Permanency Review with the state court which recommended adoption as the primary and concurrent goal. Id. at 35. The complaint also alleges that defendants George Kovarie and Barabara Jakubek, CYS supervisors, are liable for instituting and enforcing policies which caused the interference with Mr. Silva's rights.

---

[5] Mr. Silva alleges that the termination petition was filed on November 30, 2010. Comp. ¶ 33. To support this allegation, Mr. Silva references the dependency petition which is attached to the complaint as Exhibit C, but the dependency petition makes no reference to termination of parental rights. On the other hand, the Superior Court states that CYS filed the termination petition on June 27, 2011. Opinion at 4. The later date is consistent with the service plan which indicates that a termination petition had not been filed as of May 6, 2011. The service plan states that the petition should be filed by July 1, 2011. Therefore, I conclude that June 27, 2011 is the correct date.

[6] A termination decree terminates all rights and duties of a parent to a child. It also "extinguish[es] the power or the right of the parent to object to or receive notice of adoption proceedings." 23 Pa.C.S. § 2521.

The Court of Common Pleas held a hearing on the termination petition on January 30, 2012. Compl. ¶ 36. During the hearing, Ms. Kemmerer testified that Mr. Silva participated in a psychiatric evaluation. She reported the psychiatrist's evaluation:

> "Dr. Rotenberg had noted that Arnulfo is very primitive and very simplistic. He was diagnosed with borderline intelligence and personality disorder not otherwise specified. Dr. Rotenberg also went on to state that he believes Arnulfo states what Arnulfo believes people in authority want to hear. And he stated, quote, it is hard to see how this man who lives on the edge, is here as an illegal, gets along with his street smarts, but that has very little capacity in the way of planning can take care of his child, end quote"

N.T., Compl. Ex. B, 28: 14 – 23. She also testified that she didn't trust Mr. Silva appreciated the danger which Mrs. Silva posed to N.S., and she was concerned that Mr. Silva would allow Mrs. Silva to see N.S. again. Id. 37:10-20. She also cited other concerns which led her to question Mr. Silva's ability to care for N.S. by himself: 1.) he would not change N.S.'s diaper without prompting; 2.) he played "mean" with N.S.; 3.) he did not know N.S.'s clothing size; and 4.) he was a sedentary parent. Compl. ¶ 37.

The Court of Common Pleas terminated Mr. and Mrs. Silva's rights with regard ot N.S. by order dated February 2, 2012. Id. ¶ 41. On December 10, 2012, the Superior Court reversed the termination decree as to Mr. Silva only. Id. ¶ 44. The court noted that the condition causing the dependency of N.S. was the November 16 grocery store encounter. According to the Superior Court, one violation of the safety plan did not fulfill the elements of 23 Pa.C.S. § 2511(a)(5)[7] because there was no evidence that Mr. Silva

---

[7] The statute reads in relevant part: "The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions

4

would again allow Mrs. Silva to see N.S. without supervision. Opinion at 18-19. Therefore, the Superior Court held that the Court of Common Pleas "abused its discretion in finding that CYS met its burden" of proving that Mr. Silva would not remedy the condition which led to N.S.'s placement with CYS. 23 Pa.C.S. § 2511(a); Opinion at 19. On the same day the Superior Court filed its decision, Ms. Kemmerer filed a petition for permanency review with the trial court. The petition listed adoption as the primary goal. Id. Compl. ¶ 46. As of the filing of this complaint, CYS retained custody of N.S. who remained in dependent status. Id. at ¶ 47, 49.

## II.   STANDARD OF REVIEW

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). Id. at 1965; Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child." 23 Pa.C.S. § 2511(a)(5).

In deciding a motion to dismiss under Rule 12(b)(6), I may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben.Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). I must accept as true all of the factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff. Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007). However, I am not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotation marks and citations omitted). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiffs' claim is "plausible on its face," a complaint will survive a motion to dismiss. Bell Atlantic Corp., 127 S. Ct. at 1965, 1974; Victaulic Co. v. Tieman, 499 F.3d 227, 234-35 (3d Cir. 2007).

## III. DISCUSSION

The one count complaint alleges that defendants deprived Mr. Silva of his liberty without due process of law. The Due Process Clause of the Fourteenth Amendment includes both procedural and substantive elements. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (citation omitted) ("[T]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification…."). Mr. Silva's complaint does not specify whether he is

pursuing a procedural due process or a substantive due process claim. However, his arguments in response to plaintiff's motion to dismiss clarify that he is proceeding under a substantive due process theory only.[8]

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (citing United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 400-2 (3d Cir.2003)). It is not disputed that Mr. Silva has a constitutionally protected right to the custody and care of his child. Croft v. Westmoreland County Children and Youth Services, 103 F.3d 1223, 1225 (3d Cir. 1997) (citing Lehr v. Robertson, 463 U.S. 248, 258 (1983)). Mr. Silva claims, and defendants do not deny, that defendants interfered with that interest when they petitioned to terminate his parental rights. The issue is whether that interference was unconstitutional. In other words, did the caseworkers' conduct shock the conscience?

In the context of a suit against CYS, the Third Circuit has defined the type of conduct which shocks the conscience. To survive this motion to dismiss, Mr. Silva must

---

[8] To the extent Mr. Silva has attempted to plead a procedural due process claim, that claim is dismissed. *See* Compl. ¶ 73 (citing the elements of a procedural due process claim). Before the government may deprive a citizen of a protected interest, procedural due process requires the government to provide the citizen with an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citations ommitted). Here, there was an open hearing in the Berks County Court of Common Pleas before the judge entered the decree terminating Mr. Silva's parental rights. State law required that Mr. Silva have notice of the proceeding and that he had the right to be represented by counsel. 23 Pa.C.S. § 2513. Mr. Silva has not pleaded that he did not receive the prior notice nor that he was barred from the hearing. Accordingly, he has no claim for a procedural due process violation. *See* Studli v. Children & Youth And Families Cent. Reg'l Office, 346 F. App'x 804, 813 (3d Cir. 2009) ("Studli's procedural due process claim was properly dismissed, because CYS followed Pennsylvania statutory procedure, and Studli does not argue such procedures failed to protect her procedural due process rights.").

plausibly plead that defendants had "no reasonable and articulable evidence giving rise to a reasonable suspicion that [N.S. was] … in imminent danger of abuse." *See* Croft, 103 F.3d at 1126 (citing Lehr, 463 U.S. at 254 – 56 (1983); Crawford v. Washington Cnty. Children & Youth Servs., 06-CV-1698, 2008 WL 239454 (W.D. Pa. Jan. 29, 2008). Courts have interpreted Croft to require CYS to conduct an individualized investigation of child abuse claims prior to removing a child from his or her family, or in this case, initiating termination proceedings. *See* Bower v. Lawrence Cnty. Children & Youth Servs., 964 F. Supp. 2d 475, 486 (W.D. Pa. 2013) ("The removal of Baby Brandon based solely on Jameson's report of the initial urine screen—with no individualized investigation—shocks the conscience and violates Plaintiff's substantive due process rights."); Crawford, 2008 WL 239454 *7 (W.D. Pa. Jan. 29, 2008) (plaintiffs must "demonstrate[] that the underlying investigation failed to comply with the constitutional mandates…").

I will start with an analysis of Ms. Kemmerer's investigation. Since I find that her conduct was not conscience shocking, Mr. Silva's claims against the municipal and supervisory defendants fail as well.[9] City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("[N]either Monell nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.").

---

[9] Heller also exonerates Ms. Smith who is a caseworker – not a supervisor. The only allegation against Ms. Smith is that she filed the dependency petition. As a matter of necessity, she had to rely on Ms. Kemmerer's investigation in order to initiate proceedings. The logic of Heller dictates that Ms. Kemmerer cannot be liable for relying on an investigation which was constitutionally sound. Furthermore, Ms. Smith is absolutely immune for filing petitions initiating dependency proceedings. Ernst v. Child and Youth Service of Chester County, 108 F.3d 486, 495 (3d Cir. 1997).

8

According to Mr. Silva, the Ms. Kemmerer moved to terminate his parental rights based on one encounter with Mrs. Silva at a grocery store. Mr. Silva insists that the meeting was unplanned; therefore, the meeting is not evidence that he would allow further unsupervised visitation between N.S. and her mother. [10] Mr. Silva misses the point. At issue in this case is whether the Ms. Kemmerer's conduct shocks the conscience. Accordingly, Mr. Silva's intentions with regard to the grocery store meeting are not indicative of whether Ms. Kemmerer reasonably believed that N.S. was in danger of abuse. *See* Croft, 103 F.3d at 1126 ("Our focus here is whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse."); *See also* Miller v. City of Philadelphia, 174 F.3d 368, 377 (3d Cir. 1999) (noting a supervisor's progress reports of the defendant's work were inapposite to defendant's mindset). Rather, Ms. Kemmerer believed that the meeting was arranged based on competent evidence. N.T. 28: 10-13.

In any event, I reject the theory that Ms. Kemmerer recommended termination of Mr. Silva's parental rights based on one violation of the supervised visitation order. The decision to terminate Mr. Silva's rights must be viewed against the background of the twelve month long dependency during which Ms. Kemmerer thoroughly investigated the

---

[10] Relying on absolute immunity, the defendants fail to argue whether or not their actions shock the conscience. Mot to Dismiss at 10 ("The court need not determine if the allegations in the complaint sufficiently allege that the actions of the defendants "shock the conscience" as it is clear that … the remaining defendants are entitled to absolute immunity."). Normally, I would consider an issue not argued waived. However, plaintiff raises the issue on his own initiative, so I am satisfied that the plaintiff has had a fair opportunity to be heard. *See* Office of Pers. Mgmt. v. Richmond*,* 496 U.S. 414, 441, (1990) (Marshall, J., dissenting) ("The courts' general refusal to consider arguments not raised by the parties, for example, is founded in part on the need to ensure that each party has fair notice of the arguments to which he must respond."); *Cf*. Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) ("The district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action.").

family's interactions. See Compl. ¶¶ 12 – 23. The breath of the investigation and the facts supporting termination were fully laid out by Ms. Kemmerer at the termination hearing. Mr. Silva has attached a transcript of Ms. Kemmerer's testimony to the complaint; therefore, I may consider her statements when ruling on defendants' motion. Pension Ben. Gaur. Corp., 998 F.2d at 1196; Compl. ¶ 25, 44 (incorporating the termination hearing transcript and Superior Court opinion by reference). Considering the facts in this context make clear that the initiation of termination proceedings was not the result of the grocery store encounter. Rather, Ms. Kemmerer acted on evidence compiled through an extensive examination of the Silva family.

According to her testimony, Ms. Kemmerer did not think Mr. Silva was capable of parenting N.S. by himself. N.T. 39:15-17. She came to this conclusion based on her observations that: 1.) he did not know when to change N.S.'s diaper; 2.) he had trouble interacting with N.S. as she became more independent; 3.) he did not know what size clothes to buy; and 4.) he engaged in unsafe play with N.S.[11] Id. 37:24 - 38:21, 39:21 – 40:24. As a result, Ms. Kemmerer believed that Mr. Silva would need an extensive support network to help raise N.S. Id. 38:22-39:17. Lacking that support, Ms. Kemmerer feared that Mr. Silva would turn to Mrs. Silva for assistance. Id. 37:10-19, 49:15-21. This concern was heightened by Mr. Silva's failure to apprehend the risk Mrs. Silva posed to

---

[11] Mr. Silva seems to argue that any one of these concerns taken alone would not support a reasonable finding that N.S. was in danger of abuse. Pl.'s resp., doc. no. 11, 4. I think he is right. However, he fails to consider that these observations taken as a whole provided Ms. Kemmerer ample support to recommend termination.

N.S.[12] and by their meeting at the grocery store just 19 days after the dependency ended. Id. Based on these facts, Ms. Kemmerer had articulable evidence that N.S. was subject to danger of abuse if left in Mr. Silva's care. *See* Croft, 103 F.3d at 1126 (the state must have articulable evidence that the child is danger of abuse before interfering with the familial relationship).

There is no evidence that Ms. Kemmerer recommended termination because Mr. Silva was an illegal immigrant and unintelligent. Pl.'s Resp. Mem. (Doc. No. 11), at 4. These are not Ms. Kemmerer's observations. Rather, these statements were included in a report prepared by Dr. Rotenberg which Ms. Kemmerer read into the record at the termination hearing. Id. 28: 14-24. Nonetheless, my conscience would not be shocked if Ms. Kemmerer considered Mr. Silva's precarious legal status or mental acuity in reaching her decision. Dr. Rotenberg's report painted a picture of a father skirting the law and living a very unstable and unpredictable life. Due to this lack of stability, Mr. Silva's fortunes could turn suddenly. Thus, Dr. Rotenberg's report further supports Ms. Kemmerer's concern that Mr. Silva would ultimately turn to Mrs. Silva for help.

Ms. Kemmerer's testimony demonstrates that the decision to terminate Mr. Silva's rights was not based on a single event, but rather, it was the outcome of a long and thorough investigation which satisfied Croft. My conclusion is supported by the findings of the Berks County Court. After considering all the evidence, the trial court found by

---

[12] There does not appear to be any real dispute that Mrs. Silva caused N.S.'s injuries. Compl. ¶ 12, 15, 16. Mrs. Silva has a history of mental health issues, and has never taken accountability for injuring N.S. Opinion at 12. Rather, her story that N.S. sustained the injury when she climbed out of her crib is implausible. Id. Furthermore, Mrs. Silva's appealed the decree terminating her parental rights, but her counsel withdrew because the appeal would be frivolous. Opinion at 6. The Superior Court agreed and affirmed the decree of termination. Id. at 14.

clear and convincing evidence that the grounds for terminating Mr. Silva's rights existed. In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa 1994) (stating the burden of proof in involuntary termination proceedings). Notwithstanding the Superior Court's reversal of the termination decree, the trial court's finding that clear and convincing evidence supported the termination decree shows that Ms. Kemmerer certainly had objectively reasonable grounds to prosecute the termination petition. Accordingly, Ms. Kemmerer's efforts to terminate Mr. Silva's parental rights do not shock the conscience.[13] Benn v. Universal Health System, Inc., 371 F.3d 165, 174 (3d Cir.2004) (whether governmental conduct violates substantive due process is a matter of law for the court to decide).

Finally, Mr. Silva contends that Ms. Kemmerer had no factual basis to recommend adoption following the Superior Court's reversal. I disagree. Mr. Silva does not grapple with the starkly different evidentiary burdens at issue. The Superior Court reversed the termination decree finding that CYS did not present *clear and convincing evidence* that Mr. Silva would again allow Mrs. Silva to see N.S. without supervision. Opinion at 17-19. As a plaintiff in a §1983 action, Mr. Silva must show that defendants lacked *articulable evidence*. There is no question here that Ms. Kemmerer could articulate some very sound reasons for her concern about Mr. and Mrs. Silva. As I have already

---

[13] I agree with defendants that Ms. Kemmerer and Ms. Smith are shielded by absolute immunity. CYS caseworkers enjoy absolute immunity for "their actions on behalf of the state in preparing for, initiating and prosecuting dependency proceedings," Ernst v. Child and Youth Service of Chester County, 108 F.3d 486, 495 (3d Cir. 1997), or any other proceeding which determine a child's custody. B.S. v. Somerset County, 704 F.3d 250, 265 (3d Cir. 2013). Caseworker "immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings." Somerset County, 704 F.3d at 265. However, caseworkers are not immune from liability for torts they commit in the discharge of their investigative and administrative duties. Ernst, 108 F.3d 497, n. 7. Here, the caseworkers would be immune because the alleged tortious conduct was in furtherance of the dependency and termination petitions. Since I find that Ms. Kemmerer's conduct was not conscience shocking, I will not address immunity further.

discussed, Ms. Kemmerer's year long investigation revealed a great deal of evidence supporting an objectively reasonable suspicion of abuse. The Superior Court's finding that defendants lacked clear and convincing evidence does not disturb my conclusion because the Superior Court held the defendants to a standard higher than the standard for evaluating defendants' conduct in this case. As a result, articulable evidence would still support a recommendation of adoption following the Superior Court ruling. While I agree that seeking adoption following the Superior Court's ruling is confusing, I cannot say it shocks the conscience.

## IV    CONCLUSION

Contrary to Mr. Silva's assertions, I find that Ms. Kemmerer conducted an individualized and thorough investigation. Her conduct does not shock the conscience because it was reasonable for her to believe that Mr. Silva posed a risk to N.S.'s safety. Consequently, Mr. Silva's claims against the remaining defendants fail as well. Therefore, I will grant the defendants' motion to dismiss.

An appropriate order follows.